Coaled

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
Civil No. _____20-cv-24721-UU_____

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | FILED BY /////// D.C. |
| ) | |
| **DIGITAL INCOME SYSTEM, INC.,** ) | NOV 1 6 2020 |
| a Florida corporation, ) | |
| ) | ANGELA E. NOBLE |
| **DEREK JONES FOLEY, aka Derek** ) | CLERK U.S. DIST. CT. |
| Jones, individually and as an owner,) | S. D. OF FLA. - MIAMI |
| officer, and/or manager of ) | |
| Digital Income System, Inc. ) | |
| ) | |
| **WILLIAM FOLEY, individually and** ) | |
| as an owner, officer, and/or ) | |
| manager of Digital Income ) | |
| System, Inc. ) | |
| ) | |
| **CHRISTOPHER BRANDON FRYE,** ) | |
| Individually, ) | |
| ) | |
| **JENNIFER HEDRICK,** ) | |
| Individually, and ) | |
| ) | |
| **KAITLYN SCOTT,** ) | |
| Individually, ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT FOR PERMANENT INJUNCTION AND
## OTHER EQUITABLE RELIEF

Plaintiff, The Federal Trade Commission ("FTC"), for its Complaint alleges:

1.   The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, to obtain temporary, preliminary,

and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of

1

monies paid, disgorgement of ill-gotten gains, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended.  The amended Business Opportunity Rule became effective on March 1, 2012 and has since that date remained in full force and effect.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1337(a), and 1345.

3.  Venue is proper in this District under 28 U.S.C. §1391(b)(2), (b)(3), (c)(1), (c)(2), and (d) and 15 U.S.C. §53(b).

## SUMMARY OF THE CASE

4.  Defendants operate a fraudulent money-making opportunity scheme that preys on consumers hoping to earn money from home.  Defendants falsely tell consumers that, through Digital Income System's program of selling memberships, consumers will or are likely to earn large sums of money.  Defendants represent to consumers that the program will enable consumers to earn from $500 to $12,500 per sale in steady income.

5.  Defendants tell each consumer that Defendants will sell memberships in Digital Income System to other consumers on his or her behalf.  After Defendants convince the consumer to join the program, Defendants charge the consumer a substantial amount of money, ranging from $1000 to $25,000.

6.  While Defendants extract steep fees for membership, the vast majority of consumers

who pay Defendants never earn substantial income, much less the claimed amounts.  In fact, many consumers never earn anything from the program.

7.   Defendants' representations are false, misleading, and unsubstantiated.  Defendants' deceptive sales tactics violate the FTC Act and the Business Opportunity Rule.

## PLAINTIFF

8.   The FTC is an independent agency of the United States government created by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Business Opportunity Rule, 16 C.F.R. Part 437, as amended, which requires specific disclosures and prohibits certain misrepresentations in connection with the sale of a business opportunity.

9.   The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the Business Opportunity Rule and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 57b.

## DEFENDANTS

10.   "Defendants" refers to all five Defendants described below.

### Corporate Defendant

11.   Digital Income System, Inc. ("Digital Income System" or "DIS"), is incorporated in the State of Florida with its principal business address registered with the Florida Secretary of State as 6619 South Dixie Highway, # 329, Miami, Florida 33143.  DIS transacts and has transacted

3

business in this District and throughout the United States in connection with the matters discussed herein. Its effective date of incorporation was January 1, 2019.

**Owner Defendants**

12.   Derek Jones Foley, a/k/a Derek Jones ("Derek Foley"), is listed in the Florida Secretary of State records as the President and an owner of Digital Income System. Derek Foley is a Florida resident. In connection with the matters alleged herein, he has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Derek Foley has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Digital Income System as set forth in this Complaint. He has served as a "coach" to numerous Digital Income System customers and has made numerous misrepresentations to consumers. Derek Foley has had knowledge of the deceptive acts and practices of Defendants based on consumer complaints he personally received.

13.   William Foley is listed in the Florida Secretary of State records as the Secretary of Digital Income System. He is also an owner of the company. William Foley is a Florida resident. In connection with the matters alleged herein, he has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, William Foley has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Digital Income System as set forth in this Complaint. He has served as a "coach" to numerous Digital Income System customers and has made numerous misrepresentations to consumers. William Foley has had knowledge of the deceptive acts and practices of Defendants based on consumer complaints he personally received.

14. Hereinafter, "Owner Defendants" refers to Derek Jones Foley and William Foley.

**Promoter Defendants**

15. Christopher Brandon Frye ("Frye") is a promoter for Digital Income System. At all times material to this complaint, acting alone or in concert with others, Frye has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Frye resides in Arizona and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States. He has produced, narrated, and disseminated advertising and promotional materials, including videos of himself, to market DIS's business opportunity to consumers throughout the United States. In the process, he has made numerous misrepresentations to consumers. Frye has had knowledge of the deceptive acts and practices of Defendants based on consumer complaints he personally received.

16. Jennifer Hedrick ("Hedrick") is a promoter for Digital Income System. At all times material to this Complaint, acting alone or in concert with others, Hedrick has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Hedrick resides in California and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States. She has produced, narrated, and disseminated advertising and promotional materials, including videos of herself, to market DIS's business opportunity to consumers throughout the United States. In the process, she has made numerous misrepresentations to consumers. Hedrick has had knowledge of the deceptive acts and practices of Defendants based on consumer complaints she personally received.

17. Kaitlyn Scott ("Scott") is a promoter for Digital Income System. At all times

material to this Complaint, acting alone or in concert with others, Scott has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Scott resides in South Carolina and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States. She has produced, narrated, and disseminated advertising and promotional materials, including videos of herself, to market DIS's business opportunity to consumers throughout the United States. In the process, she has made numerous misrepresentations to consumers. Scott has had knowledge of the deceptive acts and practices of Defendants based on consumer complaints she personally received.

18. Hereinafter, "Promoter Defendants" refers to Frye, Hedrick, and Scott.

## DEFENDANTS' BUSINESS PRACTICES

19. Since at least early 2019, the Corporate Defendant and the Owner Defendants have marketed and sold bogus money-making opportunities to consumers throughout the United States. The Promoter Defendants have marketed Digital Income System since at least mid-2019. All Defendants advertise the purported money-making program, "Digital Income System," through webpages, social media platforms, including Facebook, and other methods.

20. DIS is a business opportunity scheme that sells "memberships" to consumers at various price points—specifically, Entrepreneur ($1,000), Director ($3,000), Professional ($5,000), Ambassador ($12,000), and Executive ($25,000). By purchasing a "membership" through DIS, consumers purportedly "earn" the right to have DIS sell memberships on their behalf to other consumers. For each sale made by DIS on behalf of a member, that member can purportedly earn a commission of up to 50% of his or her own membership level. For example, consumer A who buys at the Entrepreneur level would allegedly earn a $500 commission if DIS,

on behalf of consumer A, were to sell consumer B an Entrepreneur level membership for $1000, but consumer A would still allegedly earn a $500 commission if DIS, on behalf of consumer A, were to sell consumer C a Director level membership for $3000.

21.   Defendants market the system to consumers by describing the sales process as "fully-automatic," on "autopilot," and "hands-free." Defendants tell consumers that they are not required to do any work to commissions. The first step in the sales process is "lead generation." Upon purchasing a membership, participants receive their own websites, which advertise DIS's purported money-making program ("capture pages"). DIS claims to then "rotate" members' capture pages through "traffic"—*i.e.*, DIS sends advertisements to prospects, or "leads," including links to the members' capture pages. The higher an individual's membership level, the more "traffic rotations" a member purportedly receives. Prospects who visit members' capture pages can then click a button to request a call from a DIS "coach," at which point the prospects are prompted to enter their names and contact information. DIS claims that its closers, or "coaches," then use that contact information to call each and every one of these leads to "close" a sale of membership. If a DIS coach successfully closes a sale, the member to whom the capture page belongs purportedly earns a commission. In sum, DIS claims that it automatically generates leads for its members, calls the leads, closes the sales, and sends the commissions to members.

22.   Defendants' statements, website, advertisements, and direct mailings represent that consumers will quickly make substantial earnings using DIS.

23.   In fact, these representations are false, misleading, and unsubstantiated. Most consumers do not make substantial earnings using DIS's program, and often make no money at all.

## The Digital Income System Website

24.   Digital Income System's website states that it offers "A Fully-Automatic System for Generating Online Income: Digital Income System is an integrated all-in-one marketing solution for generating stable online income through the use of done-for-you traffic, marketing automation, and sales force crowdsharing."

25.   The DIS website makes or has recently made the following claims about how much money consumers can expect to earn using DIS's program:

     a.   "Consumers will earn between $500 and $12,500 per sale."

     b.   "You can become very wealthy."

     c.   "Each time we close a sale on your behalf, we send a huge 50% commission check straight to your doorstep."

     d.   "An amazingly simple way to generate an extra $500 all the way up to an extra $12,500 or more in steady income."

     e.   "With this unique opportunity, you can generate payments made to you without the steep learning curve or tedious hard work that the other programs make you do. . . . With our Digital Income System, you'll never have to sell anything to anyone.  That is why our system is working for people from all walks of life."

     f.   "The number one way to have a great financial future is to make a lot of money right now. . . .  Focus a few minutes a day and generate $500 to $12,500 or more in steady income with our easy three-step system."

26.   The DIS website makes or has recently made the following claims about how DIS will help consumers earn substantial amounts of money:

     a.   "We deliver automatic website traffic direct to your website for life."

8

b. "Our professional sales team calls your qualified leads and closes the sale for you."

c. "We make all the phone calls and answer all the questions.  We get them started and every time a prospect says yes, a minimum of $500 all the way up to $12,500 will be headed your way."

d. "Every time one of our professionals closes a sale on your behalf, we will send you a huge commission check right to your doorstep."

e. "The System works for you 24 hours a day, 7 days a week.  You just relax, open your mailbox, and count your money."

f. "We give you our traffic sources, you send that traffic to the DIS system, and we do the rest.  All you have to do is collect your money and enjoy your life."

g. "You never have to make or take any phone calls or sell anything to anyone. You hardly have to spend any time on this to be wildly successful.  No more than a few minutes per week on average.  There's no website for you to build, no trainings for you to attend, no webinars, and remember, no contacting anyone. When it comes to sales, our business specialists have it all covered for you.  With our turn-key and proven marketing packages, you get access to instant traffic on demand, your traffic is delivered automatically, and your targeted prospects will go through our high converting sales funnel and take the next step by requesting a call back and talking to a business specialist."

27. The video displayed on the Digital Income website, where consumers can submit their personal contact information and a request to be contacted by DIS by telephone, also

9

contains testimonials by several individuals who claim to have earned substantial amounts of money quickly and easily by using the Digital Income System:

    a.  "Dan" – generated "$26,500 in 31 days."

    b.  "Brandon F." – generated "$224,500 since joining."

        i.  "How simple this truly is.  I have money flowing to my mailbox almost every single day. . . . Easiest thing ever."

        ii.  "Built-in marketing is done for you inside the system plus a call center closing all of your sales for you."

        iii.  [Showing an array of checks] "sending checks right to my mailbox."

    c.  "Daniel Kump" – generated "$32,500 in 36 days."

        i.  "Completely blown away about how smooth the system really is.  The coaches make it super simple."

        ii.  "On your way to automatic commissions just like I have the last 30 days."

### The Promoter Defendants

28.  Many consumers view Facebook posts and YouTube videos created by the Promoter Defendants, who also communicate with consumers via Facebook Messenger, text messages, emails or telephone.  The Promoter Defendants, who purportedly describe their experiences as members of Digital Income System, act as spokespeople for the company, making the representations described above or substantially similar to those described above, including claims about how much money they have purportedly earned by selling memberships, a process they, like DIS, describe as "fully-automatic," on "autopilot," and "hands-free."  The Promoter Defendants also emphasized how the process brought money directly to the consumers' doorstep.  For example, Jennifer Hedrick told at least one consumer that, now more than ever,

people need to learn to make money from their home because of being laid off or out of a job due to coronavirus.  They make claims about the sales and commissions they have generated and represent that others who join can generate similar sales and commissions.  In making these claims over YouTube or Facebook, the Promoter Defendants display checks that they claim to have received through Digital Income System, stating or implying that consumers could receive similar checks if they join.

29.   The Promoter Defendants show or describe thousands of dollars' worth of cashier's checks and money orders they have purportedly earned through Digital Income System on their posts and videos.

30.   For example, Jennifer Hedrick has posted the following images on Facebook:





31. Kaitlyn Scott has made the following post, among others, on Facebook:



32.   Christopher Brandon Frye has made the following and other claims on a YouTube video:

a.   "It's insane guys how simple this truly is. I have money flowing to my mailbox every single day almost, thanks to our call center, thanks to our coaches who are closing our sales for us."

b.   "Digital Income System wants to make sure they take care of their members. . . . will put more money in all of our pockets."

c.   "Start with us and get these checks coming in."

d.   "All of our commissions will now be four-figure commissions. Nothing smaller than four figures coming to your mailbox."

33.   Frye has also posted a YouTube video in which he claimed to have "recently hit a huge milestone in the Digital Income System business." He has claimed that, to "commemorate" this milestone, Digital Income System sent him a large presentation check as an "award." The presentation check, which Frye held up in the video, purportedly represented the $529,000 that Digital Income System had sent to Frye for sales DIS allegedly

generated for him from April 3, 2019 through June 18, 2019, as follows:



#digitalincomesystem
Digital Income System Proof - My BIGGEST Check Yet!!
3,001 views · Jun 23, 2019

👍 56   👎 2   ↗ SHARE   ⤓ SAVE   ...

## **Defendants' Direct Mailings**

34.  DIS and Owner Defendants also recruit consumers via deceptive letters. For example, a

DIS letter signed by Defendant Derek Foley, includes the following misrepresentations:

a.  "You can start receiving checks like the one above [$12,500].  REAL checks to

deposit into your bank account by simply giving the millions of people looking

for a way to make money what they really want. (Don't worry, we know exactly

how to reach people just like you who want to make more money and we'll show

you the easiest ways to get an endless supply of these buyers.)"

b.  "Imagine how you're going to feel when you get envelopes containing REAL

checks Worth Thousands of Dollars delivered directly to your front door."

    c.   "When you see the Free Video I've made for you, you'll realize, maybe for the first time, that you actually can have all the money and the lifestyle you've been longing for all these years, because we have taken away the #1 reason people fail in their attempts to make money. We have put together something that allows complete novices all the way up to the burned out business owner to make money with almost ZERO effort."

    d.   "I have perfected my original strategies and added a Critical Update so that ordinary, average people can make an above average income from home without a steep learning curve and without picking up the telephone to talk to anyone. EVER."

The letter then refers consumers to the Digital Income System website, where they can enter their names and contact information and request a call from a coach.

### **Telephone Calls from Digital Income System Coaches**

35.   After their interaction with the company's website, a member's capture page, or with a Promoter Defendant, consumers sometimes then receive a call from a "coach" claiming to work for Digital Income System. Oftentimes, the coach identifies himself as Derek Foley, who sometimes goes by the name of Derek Jones or Coach Derek, or William Foley, who sometimes goes by the name of Coach Bill.

36.   During these telephone conversations, the coaches make earnings claims substantially similar to those described above, including representations that DIS will provide members their capture pages, "rotate" their capture pages through "traffic," generate the leads, call the leads, close the sales, and send members their commissions. The coaches claim

consumers can earn substantial amounts of money with Digital Income System, often pointing to the earnings that Promoter Defendants claim to have made.

### Payment for Membership

37.   Once consumers agree to purchase memberships, DIS coaches instruct consumers to write two cashier's checks or money orders – one made out to DIS and the other made out to the member on whose behalf DIS closed the sale.  DIS coaches instruct the consumers to mail both checks to the Digital Income System mailing address in Miami, Florida.  DIS then mails the second check to the member on whose behalf DIS closed the sale, which is usually the promoter.

### Consumers' Lack of Earnings

38.   Contrary to the representations Defendants make to consumers, in numerous instances, consumers do not earn any money from DIS.  In other instances, consumers do not make back the amount of their initial investment in DIS.

39.   Consumers have complained to DIS, to the Owner Defendants, to their coaches, and to Promoter Defendants that, contrary to Defendants' promises, DIS has generated no sales on their behalf.

40.   The Owner Defendants, the coaches, and Promoter Defendants have at times responded to the complaints by convincing consumers to buy additional leads, or "traffic," from recommended businesses, claiming the increased traffic will enhance their earnings potential.  In numerous instances, the additional traffic has resulted in no commissions.

### VIOLATIONS OF THE FTC ACT

41.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

42.   Misrepresentations or deceptive omissions of material fact constitute deceptive acts or

practices prohibited by Section 5(a) of the FTC Act.

## COUNT ONE

### Misrepresentations Regarding Earnings
### (as to all Defendants)

43.   In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of their purported money-making opportunities, Defendants represent, directly or indirectly, expressly or by implication, that purchasers of Digital Income System memberships will earn or are likely to earn substantial income.

44.   Defendants' representations set forth in Paragraph 43 are false or misleading, or were not substantiated at the time the representations were made.

45.   Therefore, Defendants' representations set forth in Paragraph 43 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. §45(a).

## VIOLATIONS OF THE BUSINESS OPPORTUNITY RULE

46.   Defendants are "sellers" who have sold or offered to sell "business opportunities" as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(c) and (q).  Under the Business Opportunity Rule, a "seller" is a person who offers for sale or sells a business opportunity.  16 C.F.R. § 437.1(q).

47.   Under the Business Opportunity Rule, a "business opportunity" means a "commercial arrangement" in which a "seller solicits a prospective purchaser to enter into a new business"; the "prospective purchaser makes a required payment"; and the "seller, expressly or by implication, orally or in writing, represents that the seller or one or more designated persons will . . . [p]rovide outlets, accounts, or customers, including, but not limited to, Internet outlets, accounts, or customers, for the purchaser's goods or services."  16 C.F.R. § 437.l(c).

48.   Among other things, the Business Opportunity Rule requires sellers to provide

prospective purchasers with a disclosure document in the form and using the language set forth in the Business Opportunity Rule and its Appendix A, and any required attachments. In the disclosure document, the seller must disclose to prospective purchasers five categories of information, including basic identifying information about the seller, any earnings claims the seller makes, the seller's litigation history, any cancellation and refund policy the seller offers, and contact information of prior purchasers. 16 C.F.R. § 437.3(a)(1)-(5). Furthermore, this information must be disclosed at least seven (7) days before the prospective purchaser signs a contract or makes a payment. 16 C.F.R. § 437.2. The pre-sale disclosure of this information enables a prospective purchaser to contact prior purchasers and take other steps to assess the potential risks involved in the purchase of the business opportunity.

49. Defendants have made earnings claims in connection with the sale of their business opportunities, as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(f). Under the Business Opportunity Rule, an "earnings claim" means "any oral, written, or visual representation to a prospective purchaser that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits." 16 C.F.R. § 437.1(f).

50. The Business Opportunity Rule prohibits sellers from making earnings claims unless the seller: (1) has a reasonable basis for the claim at the time it is made; (2) has in its possession written materials to substantiate the claim at the time it is made; (3) makes written substantiation of the earnings claim available to any prospective purchaser who requests it; and (4) furnishes an earnings claim statement to prospective purchasers in conjunction with the disclosure document, containing, among other things, information regarding the time frame captured by the earnings claim, the characteristics of the purchasers, and the number and

percentage of all persons who purchased the business opportunity within the timeframe who achieved at least the stated level of earnings. 16 C.F.R. § 437.4(a).

51.   Defendants have also made earnings claims in connection with the sale of their business opportunities in the general media, as defined by the Business Opportunity Rule, 16 C.F.R. § 437.1(h).  Under the Business Opportunity Rule, "general media" means "any instrumentality through which a person may communicate with the public, including, but not limited to, television, radio, print, Internet, billboard, Web site, commercial bulk email, and mobile communications." 16 C.F.R. § 437.l(h).

52.   The Business Opportunity Rule prohibits sellers from making earnings claims in the general media unless the seller has a reasonable basis for and written substantiation of any earnings claims and states in immediate conjunction with those claims the beginning and ending dates when the represented earnings were achieved, and the number and percentage of all persons who purchased Defendants' business opportunity prior to that ending date who achieved at least the stated level of earnings. 16 C.F.R. § 437.4(b).

53.   The Business Opportunity Rule prohibits a seller from misrepresenting the amount of sales, or gross or net income or profits a prospective purchaser may earn or that prior purchasers have earned. 16 C.F.R. § 437.6(d).

54.   The Business Opportunity Rule prohibits a seller from misrepresenting the likelihood that a seller, locator, or lead generator will find locations, outlets, accounts, or customers for the purchaser. 16 C.F.R. § 437.6(j).

55.   Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Business Opportunity Rule constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

### Disclosure Document Violations
### (as to the Corporate and Owner Defendants)

56.   In numerous instances in connection with the offer for sale, sale, or promotion of a business opportunity, Defendants fail to furnish prospective purchasers with the disclosure document and attachments required by the Business Opportunity Rule, within the time period prescribed by the Rule.

57.   Defendants' acts or practices, as described in Paragraph 56 above, violate the Business Opportunity Rule, 16 C.F.R. §§ 437.2 and 437.3(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

### Earnings Claims Violations
### (as to all Defendants)

58.   In numerous instances, Defendants make earnings claims to prospective purchasers in connection with the offering for sale, sale, or promotion of a business opportunity while, among other things, (1) lacking a reasonable basis for the earnings claim at the time it was made; (2) lacking written substantiation for the earnings claim at the time it was made; or (3) failing to provide an earnings claim statement to the prospective purchaser, as required by the Business Opportunity Rule.

59.   The Defendants' acts or practices, as described in Paragraph 58 above, violate the Business Opportunity Rule, 16 C.F.R. § 437.4(a), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT FOUR

### General Media Earnings Claims Violations
### (as to all Defendants)

60. In numerous instances, Defendants make earnings claims in the general media in connection with the offering for sale, sale, or promotion of a business opportunity while, among other things, (1) lacking a reasonable basis for the earnings claim at the time it was made; (2) lacking written substantiation for the earnings claim at the time it was made; or (3) failing to state in immediate conjunction with those claims (i) the beginning and ending dates when the represented earnings were achieved, and (ii) the number and percentage of all persons who purchased Defendants' business opportunity prior to that ending date who achieved at least the stated level of earnings.

61. The Defendants' acts or practices, as described in Paragraph 60 above, violate the Business Opportunity Rule, 16 C.F.R. § 437.4(b), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT FIVE

### Misrepresentations Regarding Income or Profits
### (as to all Defendants)

62. In numerous instances, in connection with the offer for sale, sale, or promotion of a business opportunity, the Defendants misrepresent a specific level or range of actual or potential sales or gross or net income or profits that a prospective purchaser may earn or that prior purchasers have earned.

63. The Defendants' acts or practices, as described in Paragraph 62 above, violate the Business Opportunity Rule, 16 C.F.R. § 437.6(d), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT SIX

### Misrepresentations
### (as to all Defendants)

64.   In numerous instances, in connection with the offer for sale, sale, or promotion of a business opportunity, the Defendants misrepresent the likelihood that Digital Income System will find locations, outlets, accounts, or customers for the purchaser by providing leads of other consumers who might be interested in purchasing the Digital Income System.

65.   The Defendants' acts or practices, as described in Paragraph 64 above, violate the Business Opportunity Rule, 16 C.F.R. § 437.6(j), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

66.   Consumers throughout the United States are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the Business Opportunity Rule.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

67.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies to prevent and remedy any violation of any provision of law enforced by the FTC.

68.   Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as

23

the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the Business Opportunity Rule, including rescission and reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the Business Opportunity Rule, 16 C.F.R. § 437, and the Court's own equitable powers, request that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including temporary and preliminary injunctions, an order freezing assets, immediate access to any business premises, and appointment of a receiver;

B.      Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: November 16, 2020

Respectfully submitted,
FEDERAL TRADE COMMISSION

ALDEN ABBOTT
GENERAL COUNSEL

HAROLD E. KIRTZ, Trial Counsel
Florida Special Bar Number A5500743
LARA TUMEH, Trial Counsel
Georgia Bar # 850467
Federal Trade Commission
225 Peachtree Street, Suite 1500
Atlanta, Georgia 30303
Phone: 770-789-9378 (Harold)
        202-730-6470 (Lara)
Fax: 404-656-1379
hkirtz@ftc.gov
ltumeh@ftc.gov